UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIGHYAN PRATAP, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>        Defendants. | Case No. 12-cv-06378-MEJ<br><br>**ORDER RE: MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 37, 38 |

## INTRODUCTION

This lawsuit arises from Plaintiffs Vighyan and Sunila Pratap's ("Plaintiffs") default on four real estate loans and the resulting foreclosures on the properties pledged to secure those loans. Pending before the Court are Defendants Wells Fargo Bank, N.A., and Mortgage Electronic Registration Systems, Inc.'s ("MERS") (collectively, "Defendants") Motion to Dismiss Plaintiffs' Corrected First Amended Complaint (Dkt. No. 37) and Motion to Strike Portions thereof (Dkt. No. 38). The Court previously found this matter suitable for disposition without oral argument and vacated the hearing on Defendants' motions. Dkt. No. 61. Having considered the parties' papers, relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motion to Dismiss for the reasons set forth below. The Court additionally **DENIES** as moot Defendants' Motion to Strike.

## BACKGROUND

**A.  Overview**

Plaintiffs are the Trustors/Borrowers on deeds of trust to four parcels of real property. First Am. Compl. ("FAC") ¶ 2, Dkt. No. 33. The first property is a duplex located at 718 West Sunset Blvd. #722, Hayward, California, 94541-4722, APN No. 432-0020-041, ("718 Sunset"). *Id*. The second property is a duplex located at 730 West Sunset Blvd. #734, Hayward, California,

94541-4722, APN No. 432-0020-040 ("730 Sunset"). *Id.* The third property is a single family residence located at 1844 Bockman Road, San Lorenzo, California, 94580-2133, APN No. 411-0051-032 ("1844 Bockman"). *Id.* The fourth property is a single family residence located at 1970 149th Avenue, San Leandro, California, 94578-1302, APN No. 080-0008-019, ("1970 149th Ave."). *Id.*

The relevant allegations, taken from Plaintiffs' FAC and Defendants' Request for Judicial Notice ("RJN")[1] are as follows.

**B.     The Properties**

    1.     718 Sunset

In May 2006, Plaintiffs took out an equity line of credit ("ELOC") from Wells Fargo's predecessor, World Savings Bank, FSB, in the amount of $233,000. RJN, Ex. F.[2] This loan was secured by a Deed of Trust ("DOT") on the 718 Sunset property, which was recorded in the

---

[1] Pursuant to Federal Rule of Evidence 201(b)(2), Defendants request that the Court take judicial notice of 24 documents, attached as Exhibits A - X to Defendants' Request. Dkt. No. 39. As to Exhibits A - E, the Court has reviewed these documents and agrees with Defendants that it may properly take judicial notice of them as true and correct copies of documents reflecting official acts of the executive branch of the United States pursuant to California Evidence Code section 452, as well as information obtained from government websites. *See Preciado v. Wells Fargo Home Mortg.*, 2013 WL 1899929, at *3 (N.D. Cal. May 7, 2013) (taking judicial notice of same documents). As to Exhibits F and L, the Court has reviewed these documents and finds that it may take judicial notice of them because they are documents Plaintiffs refer to in the Complaint and form the basis of Plaintiffs' claims, and their authenticity is not in question. *Id.* at *2. With respect to Exhibits G - K and M - X, the Court has reviewed these documents and finds that judicial notice is appropriate because they are true and correct copies of official records of the Alameda County Recorder's Office and their authenticity is capable of accurate and ready determination. *Id.*; *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). Plaintiffs have filed an Objection to Defendants' Request for Judicial Notice, arguing that while the Court may take judicial notice of the fact that a document was recorded, it may not take judicial notice of factual matters stated therein. Dkt. No. 44. They argue that Defendants' Request seeks judicial notice of the truth of the matters asserted within those documents and those statements are hearsay and are reasonably subject to dispute. *Id.* at 2. In granting Defendants' Request and taking judicial notice of Exhibits A - X, the Court only takes judicial notice of undisputable facts – such as the filing or the fact that the document states something to give context, as opposed to for the truth of the matter asserted in any document. *See Preciado*, 2013 WL 1899929, at *2. Accordingly, the Plaintiffs' objection is OVERRULED.

[2] Wells Fargo's predecessor in interest, World Savings Bank, FSB, changed its name to "Wachovia Mortgage, FSB" effective December 31, 2007, and then merged into Wells Fargo Bank, N.A. in November 2009. Exhibits A through E attached to Defendants' Request for Judicial Notice are documents issued by the Office of Thrift Supervision, the Office of the Comptroller of the Currency, and the FDIC that evidence this name change and merger.

Alameda County Recorder's Office on June 6, 2006. RJN, Ex. G. In April 2012, Wells Fargo recorded a Request for Notice of Default ("NOD") concerning this property. RJN, Ex. H.

On February 13, 2007, Plaintiffs signed a deed of trust concerning this property, securing a loan in the amount of $155,000.00 from Washington Mutual, which was recorded in the Alameda County Recorder's Office on March 3, 2007. RJN, Ex. I. In February 2012, JPM Chase, as successor to Washington Mutual, caused to be recorded a NOD on its March 2007 DOT. RJN, Ex. J. According to the NOD, Plaintiffs defaulted on their loan in November 2010. *Id*. Plaintiffs were in arrears $16,518.25 at the time the NOD was recorded. *Id*. On May 11, 2012, a Notice of Trustee Sale ("NOT") was recorded, noticing a sale date of June 5, 2012. RJN, Ex. K.

### 2. 730 Sunset Property

On May 24, 2006, Plaintiffs took out an ELOC from World Savings Bank in the amount of $233,000. RJN, Ex. L. This loan was secured by a DOT on the 730 Sunset property. RJN, Ex. M. On February 1, 2011, Wells Fargo caused to be recorded a NOD on its May 2006 ELOC. RJN, Ex. N. The NOD was recorded by NDEX WEST, LLC ("NDEX") as Agent for the Beneficiary, thereby initiating the process of foreclosing upon 730 Sunset. FAC ¶ 19. According to this Notice, Plaintiffs defaulted on this loan in November 2010, and were in arrears $3,922.23 at the time the Notice was recorded. *Id.* Shortly thereafter, a Substitution of Trustee was recorded naming NDeX as trustee. RJN, Ex. O. Subsequently, a NOT was recorded in September 2012. RJN, Ex. P.

### 3. 1970 149th Ave.

In May 2006, Plaintiffs obtained another ELOC from World Savings Bank in the amount of $416,000.00, secured by a DOT on the 1970 149th Avenue property. RJN, Ex. Q. In August 2012, Wells Fargo caused to be recorded a NOD on its May 2006 ELOC. RJN, Ex. R. The NOD was recorded by NDEX WEST, LLC ("NDEX") as Agent for the Beneficiary, thereby initiating the process of foreclosing upon this property. FAC ¶ 33. According to The Notice, Plaintiffs defaulted on this loan in January 2012, and were $5,908.16 in arrears at the time it was recorded. *Id.* Shortly thereafter, a Substitution of Trustee was recorded naming NDeX as trustee. RJN, Ex. S. The trustee sale has not yet been noticed.

3

4.     1844 Bockman

In March 2003, Plaintiffs obtained a loan in the amount of $155,000.00 from SMCE Mortgage Bankers, Inc., secured by a DOT on the 1844 Bockman property.  RJN, Ex. T.  The DOT reflects that the beneficiary under the security instrument is MERS.  *Id.* at 2.  In March 2012, MERS caused to be recorded a Corporate Assignment of Deed of Trust transferring all beneficial interest under the DOT to Wells Fargo.  RJN, Ex. U.

In July 2012, Wells Fargo caused to be recorded a NOD on the SMCE loan.  RJN, Ex. V.  According to the Notice, Plaintiffs defaulted on this loan in January 2012, and were $11,169.15 in arrears at the time it was recorded.  *Id*.  A Substitution of Trustee was also recorded, substituting Cal-Western Reconveyance Corporation as Trustee.  RJN, Ex. W.  A NOS dated January 23, 2013 was recorded in the official records of the Alameda County Recorder's Office on February 2, 2013.  RJN, Exh. X.

**C.     Plaintiffs' Allegations**

Plaintiffs allege that when their loans originated, the lender securitized and sold each note and each deed of trust to a securitized trust, after which Wells Fargo collected mortgage payments without authorization.  FAC ¶ 14 (718 Sunset), ¶ 18 (730 Sunset), ¶ 25 (1844 Bockman), ¶ 29 (1970 149th Ave.).  Plaintiffs allege that in collecting the mortgage payments, Wells Fargo violated the deed of trust and a Pooling and Servicing Agreement ("PSA").  *Id*. ¶¶ 16, 26, 30.  Plaintiffs also allege that the recorded foreclosure documents (e.g., the notices of default, substitutions of trustee and notices of trustee sale) are void because they were robo-signed and signed by employees of Wells Fargo who did not have authority to sign the documents.  *Id*. ¶¶ 38, 39, 41.

Based on the contention that Plaintiffs' loans were sold as a mortgage-backed securities, and the securitization was not perfected, the FAC names Wells Fargo and MERS in claims for slander of title (*Id*. ¶ 37) and violation of Business & Professions Code section 17200 ("UCL") (*Id*. ¶ 49).  Plaintiffs also claim violations of the Truth in Lending Act ("TILA"), Fair Debt Collection Practices Act ("FDCPA") and Racketeering-Influenced and Corrupt Organizations Act ("RICO"), which are premised on alleged faulty assignments, securitization and note ownership

4

theories. *Id*. ¶¶ 56-59, 73, 76, and 99.

Plaintiffs further allege that the recorded foreclosure documents (e.g., the notice of default, substitution of trustee and notice of trustee sale) are void because they were robo-signed and/or signed by employees of Wells Fargo who did not have authority to sign the documents based on securitization defects. *Id*. ¶¶ 38-41, 70, 77c. Plaintiff s base their slander of title, UCL and RICO claims are on these allegations as well.

Finally, Plaintiffs allege Wells Fargo failed to contact them as required by California Civil Code section 2923.5 prior to recording the notice of default on the 730 Sunset, 1844 Bockman and 1970 149th Avenue properties. *Id*. ¶¶ 35-36. Because Plaintiffs were never contacted, they allege the declaration attached to each notice of default is false, rendering each notice void. *Id*. ¶¶ 35-36, 48, 65.

**D.     Procedural Background**

On November 12, 2012, Plaintiffs filed this lawsuit in Alameda County Superior Court, asserting claims under California law for: (1) breach of express agreements; (2) breach of implied agreements; (3) slander of title; (4) wrongful foreclosure; (5) violation of California Civil Code section 2923.5; and (6) violation of California Business and Professions Code section 17200 (unfair business practices). Dkt. No. 1, Ex. A. Defendants removed the case to this Court on December 17, 2012, based on diversity jurisdiction. *Id*. at 1.

On December 27, 2012, Defendants moved to dismiss Plaintiffs' original complaint. Dkt. No. 4. On October 1, 2013, the Court granted Defendants' motion to dismiss the six claims in the original complaint, but gave Plaintiffs leave to amend their slander of title and unfair competition claims to the extent they could set forth cognizable theories not premised on allegations of flawed securitization, challenges to note ownership, or violations of Civil Code section 2923.5. Order re: Mot. to Dismiss ("Order"), Dkt. No. 31.

Plaintiffs filed their FAC on October 17, 2013, asserting claims under California law for: (1) slander of title; (2) violation of the UCL; (3) violation of 15 U.S.C. § 1601 "TILA); (4) violation of 15 U.S.C. § 1962 (FDCPA); and (5) violation of 18 U.S.C. § 1962 (RICO). Dkt. No. 33.

1    On October 31, 2013, Defendants moved to dismiss each of Plaintiffs' claims pursuant to
2    Federal Rule of Civil Procedure ("Rule") 12(b)(6) on the grounds that Plaintiffs have failed to
3    state facts sufficient to state claim, the claims are preempted by federal law, and the claims fail for
4    lack of tender. Dkt. No. 37. Defendants also filed a Motion to Strike ("MTS"): (1) the Third,
5    Fourth, and Fifth Claims pursuant to Rule 15(a)(2) because they were added without leave of
6    Court; (2) the prayer for punitive damages; and (3) the prayer for money damages which are not
7    available under the UCL. Dkt. No. 38. Plaintiffs have filed an Opposition to the Motion to
8    Dismiss (Dkt. No. 42) and to the Motion to Strike (Dkt. No. 43). Defendants have filed a Reply to
9    both motions. Dkt. Nos. 45 and 46.

**LEGAL STANDARD**

Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

6

1  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to
2  dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652
3  F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply
4  recite the elements of a cause of action, but must contain sufficient allegations of underlying facts
5  to give fair notice and to enable the opposing party to defend itself effectively"). The court must
6  be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."
7  *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . .
8  [is] a context-specific task that requires the reviewing court to draw on its judicial experience and
9  common sense." *Id.* at 679.

10  If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no
11  request to amend the pleading was made, unless it determines that the pleading could not possibly
12  be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en
13  banc) (internal quotation marks and citations omitted).

## DISCUSSION

### A.   First Claim: Slander of Title

16  Plaintiffs allege slander of title in connection with the DOTs, NODs, and the substitution
17  of trustee pertaining to the 730 Sunset, 1844 Bockman, and 1970 149th Avenue properties. FAC
18  ¶¶ 33-45. This claim is identical to the claim which was previously dismissed, with the exception
19  of several new allegations regarding robo-signing. Order at 13.

20  Defendants argue that Plaintiffs cannot allege a claim for slander of title because: (1)
21  Plaintiffs lack standing to challenge the assertions of robo-signing; (2) the robo-signing allegations
22  are too conclusory; (3) Plaintiffs cannot demonstrate any statement which is not privileged or
23  made with malice; and (4) Plaintiffs cannot demonstrate prejudice.

24  To state a claim for slander of title, Plaintiffs must allege: "(1) a publication; (2) which is
25  false; (3) which is without privilege or justification, and (4) which causes direct and immediate
26  pecuniary loss." *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051
27  (2009).

28  Plaintiffs' slander of title theory is now premised on the allegation that February 25, 2011

7

Substitution of Trustee for the 730 W. Sunset property is invalid because it was robo-signed by Rick Juarez, a known robo-signer. *See* FAC ¶ 39; RJN, Ex. O. Plaintiffs allege that Rick Juarez is not authorized by Wells Fargo to sign the substitution of trustee as attorney in fact for Wells Fargo. FAC ¶ 39. Thus, NDeX was not the properly substituted trustee under the deed of trust. *Id*. On this basis, each subsequent document recorded by NDeX (i.e., the NOD, 2011 NOS and 2012 NOS) is false because NDeX did not have legal authority to record the documents. *Id*. Plaintiffs also allege that foreclosure documents recorded regarding the 1844 Bockman Property were false due to "unperfected securitization," and "the use of robo-signers." *Id.* ¶ 41. However, Plaintiffs fail to identify what documents were robo-signed, the alleged robo-signer(s), and the facts on which they base their allegations of robo-signing.

These allegations do not support a slander of title claim. *See Rubio v. U.S. Bank N.A.*, 2014 WL 1318631, at *11 (N.D. Cal. Apr. 1, 2014) (citing *Elliott v. Mortg. Elec. Registration Sys., Inc.*, 2013 WL 1820904, at *2 (N.D. Cal. Apr. 30, 2013)) (allegedly "robo-signed" documents did not affect the validity of the foreclosure process in light of plaintiff's default and, therefore, did not support slander of title claim and collecting cases). Moreover, numerous courts have found that where a plaintiff alleges that a document is void due to robo-signing, yet does not contest the validity of the underlying debt, and is not a party to the assignment, the plaintiff does not have standing to contest the alleged fraudulent transfer.[3] *Maynard v. Wells Fargo Bank, N.A.*, 2013 WL 4883202, at *9 (S.D. Cal. Sept. 11, 2013) (citing *Kuc v. Bank of Am., NA*, 2012 WL 1268126, at *2 (D. Ariz. Apr.16, 2012) ("[P]laintiff, as a third-party borrower, does not have standing to challenge the validity of any allegedly 'robosigned' recorded assignments."); *Javaheri v. JPMorgan Chase Bank N.A.*, 2012 WL 3426278, at *6 (C.D. Cal. Aug. 13, 2012) (accepting allegations of robo-signing as true, but holding that plaintiff lacked standing to challenge

---

[3] Plaintiffs maintain that they are the intended beneficiaries of the "Substitution of Trustee" procedures set forth in their loan contract. Opp'n at 14. Yet, Plaintiffs agreed that Wells Fargo has the exclusive right to appoint a successor trustee. RJN Ex. M, ¶27 at p.12 ("I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.").

8

substitution of trustee agreement)).[4]  As in *Javaheri*, the Court agrees that even if Plaintiffs' robo-signing allegations are true, Plaintiffs lack standing to seek relief under such an allegation.  *Id*. at *6.

      Moreover, to the extent that an assignment was in fact robo-signed, it would be voidable, not void, at the injured party's option.  *Maynard*, 2013 WL 4883202, at *9.  Here, the injured party would be Wells Fargo Bank, not Plaintiffs.  *See id*. (citing *Bateman v. Countrywide Home Loans*, 2012 WL 5593228, at *4 (D. Haw. Nov. 14, 2012) ("The reason debtors generally lack standing to challenge assignments of their loan documents is that they have no interest in those assignments, and the arguments they make do not go to whether the assignments are void ab initio, but instead to whether the various assignments are voidable. Debtors lack standing to challenge voidable assignments; only the parties to the assignments may seek to avoid such assignments.") (citing Williston on Contracts § 74:50 (4th ed.)).  The substitution of trustee ("SOT") in this case adds NDeX as trustee of the DOT.  FAC ¶ 39.  "[Plaintiffs] w[ere] not party to this assignment, and did not suffer any injury as a result of the assignment.  Instead, the only injury [Plaintiffs] allege[] is the pending foreclosure on [their] home, which is the result of [their] default on [their] mortgage[s].  The foreclosure would occur regardless of what entity was named as trustee, and so [Plaintiffs] suffered no injury as a result of this substitution."  *Javaheri*, 2012 WL 3426278, at *6.

      Relying on *Chan Tang v. Bank of America, N.A*., 2012 WL 960373 (C.D. Cal. Mar. 19, 2012), Plaintiffs argue that their allegations of robo-signing "state a facially plausible claim that Defendants slandered title by recording foreclosure documents they had no authority to execute in

---

[4] To the extent Plaintiffs rely on *Glaski v. Bank of America, N.A*., 218 Cal. App. 4th 1079, 1097 (2013), for the proposition that they have standing to challenge PSA violations on their loans, the Court disagrees.  *Glaski* represents a distinct minority view on the standing of third parties to enforce or assert claims based on alleged violations of a PSA.  *Apostol v. CitiMortgage, Inc*., 2013 WL 6328256, at *6 (N.D. Cal. Nov. 21, 2013).  "Courts in this District have expressly rejected *Glaski* and adhered to the majority view that individuals who are not parties to a PSA cannot base wrongful foreclosure claims on alleged deficiencies in the PSA/securitization process."  *Id*. at *7 (citing *Dahnken v. Wells Fargo Bank, N.A*., 2013 WL 5979356, *2 (N.D. Cal. Nov. 8, 2013) ("The court adopts the 'majority position' of courts within this district, which is that 'plaintiffs lack standing to challenge noncompliance with a PSA in securitization unless they are parties to the PSA or third party beneficiaries of the PSA.'"); *In re Sandri*, 501 B.R. 369, 378(Bankr. N.D. Cal. 2013) ("The court disagrees, as *Glaski* is inconsistent with the majority line of cases and is based on a questionable analysis of New York trust law.")).

the first place." Opp'n at 13. District courts have consistently found that conclusory allegations of robo-signing are insufficient to state a claim, absent some factual support. *Rivac v. Ndex West LLC*, 2013 WL 6662762, at *6 (N.D. Cal. Dec. 17, 2013) (conclusory allegations made on "information and belief" that documents were signed by robo-signers without proper authority to execute those documents insufficient to state a claim) (citing *Baldoza v. Bank of America, N.A.*, 2013 WL 978268 at *13 (N.D. Cal. Mar. 12, 2013); *Chan Tang*, 2012 WL 960373, at *10–11; *Sohal v. Fed. Home Loan Mortg. Corp.*, 2011 WL 3842195, at *5 (N.D. Cal. Aug. 30, 2011); *Chua v. IB Property Holdings*, LLC, 2011 WL 3322884, at *2 (C.D. Cal. Aug. 1, 2011)).

In a final attempt to save this cause of action, Plaintiffs argue that Defendants failed to comply with California Civil Code section 2934a in recording the NOD because they did so before recording the SOT. Opp'n at 10-11. This argument fails to state a cause of action for slander of title. An authorized agent of the trustee, mortgagee or beneficiary may record a notice of default. Cal. Civ. Code § 2924(a)(1). As the NOD is not required to be recorded by the Trustee, it follows that the SOT did not have to be recorded prior to the recording of the notice of default. *See Elliott*, 2013 WL 1820904, at *2. Thus, NDEX could record the notice of default as an agent of Wells Fargo, the beneficiary. Indeed, each NOD is signed by NDEX "as agent." *See* RJN Ex. N (730 W. Sunset), Ex. R (1970 149th Avenue). Furthermore, where, as here, the substitution of trustee was executed after the NOD was recorded, but prior to the recording of a NOS, Civil Code section 2934a requires that the notice of substitution be mailed prior to or concurrently with the recording of the notice of sale, in the manner provided in section 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of section 2924b. *See* Cal. Civ. Code § 2934a(b).

Plaintiffs' remaining allegations are based on allegations that were previously dismissed with prejudice, such as allegations of violation of California Civil Code section 2923.5. Order at 9-12; FAC ¶¶ 35-37, 41. The Court will not revisit its previous ruling regarding these. Accordingly, this cause of action is DISMISSED with prejudice.

**B.   Second Claim: Violation of Unfair Competition Law**

Plaintiffs' second claim is for violation of the UCL, which proscribes "unlawful, unfair or

fraudulent" business acts and practices. Cal. Bus. & Prof. Code § 17200, et seq. "[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations … as unlawful practices, independently actionable under section 17200, et seq. and subject to the distinct remedies provided thereunder." *Farmers Ins. Exch. v. Super. Court*, 2 Cal. 4th 377, 383, (1992). Where a plaintiff cannot state a claim under the "borrowed" law, he or she cannot state a UCL claim either. *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot be liable under § 17200 for committing unlawful business practices without having violated another law.")

Defendants maintain that Plaintiffs failed to allege injury and, as a result, they lack standing to pursue their UCL claim. Mot. at 15. Defendants also argue that this claim should be dismissed because the UCL is a derivative cause of action and Plaintiffs have not properly pled any other claims. *Id.* The Court agrees with Defendants. Plaintiffs have not alleged facts to show that Defendants' practices directly caused economic injury and, thus, they lack standing under the UCL. *See DeLeon v. Wells Fargo Bank, N.A*., 729 F. Supp. 2d 1119-20 (N.D. Cal. 2010) ("the facts alleged suggest that Plaintiffs lost their home because they became unable to keep up with monthly payments and lacked the financial resources to cure the default . . . . [I]t does not appear that [the bank's] conduct resulted in a loss of money or property. For this reason, Plaintiffs lack standing to sue under the UCL, and the claim must be dismissed."). Further, Plaintiffs failed to state any valid cause of action by failing to cure the inadequacies in the original Complaint and by alleging several new deficient causes of action.

Plaintiffs' section 17200 claims "rise and fall with the substantive causes of action already discussed." *Tamburri v. Suntrust Mortgage, Inc*., 2011 WL 6294472, at *18 (N.D. Cal. Dec. 15, 2011). As there are no longer any underlying causes of action against Defendants to support Plaintiffs' UCL claim, this cause of action is DISMISSED with prejudice.

**C.  Third Claim: Violation of Truth in Lending Act**

Plaintiffs allege that Defendants violated 15 U.S.C. § 1641(f) and § 1641(g) of TILA because they failed to: (1) provide accurate material disclosures and (2) "disclose the actual note-holder-assignee to whom this promissory note was transferred and assigned." FAC ¶¶ 55, 57.

11

Plaintiffs allege they "have incurred and continue to incur damages" as a result of these violations. *Id.* ¶ 61.

Defendants argue that the TILA claims fail because: (1) Plaintiffs' failure to allege tender precludes their claims; and (2) the allegations are time-barred. Mot. at 17. Plaintiffs counter that failure to tender does not serve as a bar to their TILA action while a foreclosure sale is pending. Opp'n at 15 (citing *Chan Tang*, 2012 WL 960373, at *3). Plaintiffs argue that tender is not required in instances "where the foreclosure sale is void, rather than voidable, such as when plaintiff proves that the entity lacked the authority to foreclose."[5] *Id.* (citing *Glaski*, 218 Cal. App. 4th at 1095); *Dimock v. Emerald Properties, Inc.*, 81 Cal.App.4th 868, 877 (2008)). Plaintiffs further contend that their claims should be equitably tolled to "effectuate the congressional purpose of the Truth-in-Lending Act" in this matter. *Id.* (citing *King v. State of Cal.*, 784 F.2d 910, 914-15 (1986)).

TILA ensures that creditors disclose material information to consumers about the terms of credit transactions and requires disclosure at the time the credit contract is executed. *Ananiev v. Aurora Loan Services, LLC*, 2012 WL 2838689, at *4 (N.D. Cal., July 10, 2012) (citing *Meyer v. Ameriquest Mortg. Co.*, 406 F.3d 899, 902 (9th Cir. 2003); 15 U.S.C. § 1601(a)). An action under TILA for actual or statutory damages must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "[A]s a general rule[, this] limitations period starts [to run] at the consummation of the transaction." *King*, 784 F.2d at 915. This lawsuit was filed on November 12, 2012. Dkt. No. 1. Plaintiffs signed the loan documents for these properties in March of 2003 and June of 2006. FAC ¶¶ 13, 17, 24, 28. Therefore, the statute of limitations for Plaintiffs' TILA damages claim expired in March 2004 and June 2007.

Additionally, a borrower's right to rescind a loan transaction under TILA "expire[s] three years after the date of the consummation of the transaction[.]" 15 U.S.C. § 1635(f). "Unlike TILA's one year period for civil damages claims, the three year period for TILA rescission claims

---

[5] Plaintiffs inexplicably dedicate four pages of their Opposition to general argument that a plaintiff need not allege tender when challenging a foreclosure. Opp'n 5-8. Yet, Plaintiffs fail to address the issue of tender in response to Defendants' TILA argument on page 17, which is the only claim to which tender is relevant. *See* Opp'n at 5-8, 15-16.

12

is an 'absolute' statute of repose that cannot be tolled." *Falcocchia v. Saxon Mortg., Inc.*, 709 F. Supp. 2d 860, 867 (E.D. Cal. 2010); *Beach v. Ocwen Fed Bank*, 523 U.S. 410, 412-13, 419 (1998) (Section "1635(f) completely extinguishes the right of rescission at the end of the 3-year period," even if the lender has never made the required disclosures); *see also Miguel v. Country Funding Corp.*, 309 F. 3d 1161, 1164 (9th Cir. 2002) (holding that "§ 1635(f) is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three year limitation period"). Based on the dates Plaintiffs consummated their transactions, the right to rescind expired in March 2006 and June 2009.

Plaintiffs allege that the statute should be equitably tolled based on "Defendants' failure to effectively provide the required disclosures and notices." FAC ¶ 58. Delayed discovery requires facts establishing that: (1) plaintiffs had no knowledge of the injury; (2) they lacked means for obtaining such knowledge; and (3) how and when they actually learned of the injury. *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995); *Parson v. Tickner*, 31 Cal. App. 4th 1513, 1525 (1995). "Formal averments or general conclusions to the effect that the facts were not discovered until a stated date, and that the plaintiff could not reasonably have made an earlier discovery, are useless." *Waldrup V. Countrywide Financial Corp.*, 2014 WL 1463881, at *5 (C.D. Cal. Apr. 24, 2014); *see also Soliman v. Philip Morris Inc.*, 311 F.3d 966, 975 fn12 (9th Cir. 2002)). Here, Plaintiffs' allegations are insufficient to justify equitable tolling since they have not alleged facts demonstrating they did not have a "reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA [claim]" within the one-year limitations period. *King*, 784 F.2d at 915.

Based on this analysis, the Court finds that Plaintiffs' claims are barred by the statute of limitations. Accordingly, Plaintiffs' TILA rescission claim is DISMISSED with prejudice.

**D.    Fourth Claim: Violation of Fair Debt Collection Practices Act**

Plaintiffs allege that Wells Fargo's written communications with Plaintiffs about their default constitutes illegal debt collections practices under the FDCPA. FAC ¶¶ 64-74. Defendants argue that the claims should be dismissed for three reasons: (1) Wells Fargo was collecting a debt owed to itself; (2) as a mortgage servicer, Wells Fargo is not a "debt collector"

13

within the meaning of the FDCPA; and (3) foreclosing on a property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA. Mot. at 18-19. Plaintiffs maintain that Wells Fargo is a debt collector because a "letter requesting payment on a promissory note secured by a mortgage is "an attempt at debt collection" within the meaning of the FDCPA." Opp'n at 16 (citing *Reese v. Ellis, Painter, Ratterree & Adams, LLP* 678 F.3d 1211, 1216-17 (11th Cir. 2012)).[6]

To state a claim under the FDCPA, "a plaintiff must allege facts that establish the following: (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Gomez v. Wells Fargo Home Mortg.*, 2011 WL 5834949, at *5 (N.D. Cal. Nov. 21, 2011) (internal citations omitted). The term "debt collector" is defined as "any person ... in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Wells Fargo is not a "debt collector" within the meaning of the FDCPA because it was attempting to collect its own debt. *Valdez v. America's Wholesale Lender*, 2009 WL 5114305, at * 25–26 (N.D. Cal. Dec. 18, 2009) (defendant mortgage company efforts to collect its own debt does not make defendant a 'debt collector' under the FDCPA); *see also Zhuravlev v. BAC Home Loans Servicing, LP*, 2010 WL 2873253, at *2 (N.D. Cal. July 20, 2010) (a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as

---

[6] In addition to being a non-binding case from the Eleventh Circuit case, *Reese* is factually distinguishable. In that case, a law firm representing a lender was found to be a debt collector when it aided its client in collecting the amount owed on the promissory note. *Reese*, 678 F.3d at 1216. Plaintiffs cite a number of other factually inapposite cases from the 6th and 11th Circuits without analysis: *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241-42 (11th Cir. 2012) (law firm collecting on behalf of lender is a debt collector within meaning of FDCPA); *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355 (6th Cir. 2012) (servicer can be a debt collector under FDCPA if they acquire a debt in default or have treated the debt as if it were in default at the time of acquisition); *Glazer v. Chase Home Finance LLC*, 704 F.3d 453 (6th Cir. 2013)(holding mortgage servicing company that obtained loan for servicing *before* default was not "debt collector" under FDCPA, but interpreting the FDCPA to include foreclosure within definition of "debt collection.").

1  long as the debt was not in default at the time it was assigned).  Nor is a mortgage servicing

2  company … a debt collector within the meaning of the FDCPA.  *See Reyes-Aguilar v. Bank of*

3  *America, N.A*, 2014 WL 2917049, at *10 (N.D. Cal. June 24, 2014); *Caballero v. Ocwen Loan*

4  *Serv.*, 2009 WL 1528128, at *1 (N.D. Cal May 29, 2009) (loan servicer was not "debt collector"

5  under FDCPA); *Jelsing v. MIT Lending*, 2010 WL 2731470, at *5 (S.D. Cal. July 9, 2010)

6  ("Plaintiffs have not alleged that Wells Fargo is a debt collector.  Wells Fargo is a mortgage

7  servicer, and [a] mortgage servicing company is not a debt collector within the meaning of the

8  FDCPA); *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1031 (9th Cir. 2009) ("a 'creditor' is

9  not a 'debt collector' under the FDCPA").  Additionally, the overwhelming majority of courts

10 within the Ninth Circuit have concluded that nonjudicial foreclosures do not constitute debt

11 collection under the FDCPA.  *See, e.g., Ligon v. JP Morgan Chase Bank*, 2011 WL 2550836, at

12 *3 (N.D. Cal. June 27, 2011) (collecting cases).  Accordingly, this claim is DISMISSED with

13 prejudice.

**E.      Fifth Claim: Violation of** 18 U.S .C. § 1962(c) and (d) ("**RICO")**

15 Last, Plaintiffs assert a claims for violation of RICO, 18 U.S .C. § 1962(c) and (d) against

16 Defendants.  FAC ¶¶ 75-109.  Plaintiffs allege that as part of a scheme to "defraud everyone,"

17 Defendants: "concealed the fact that the Loans were securitized"; "concealed  the terms of the

18 Securitization Agreements"; "br[ought] suit on behalf of entities that were not the real parties in

19 interest"; "actively conceal[ed] the parties' lack of standing"; "draft[ed] ... fraudulent affidavits

20 and documents," including documents executed by robo-signers; and conveyed foreclosure-related

21 documents using the U.S. Mail and the internet.  *Id.* ¶¶ 76-78.

22 "[C]ourts should strive to flush out frivolous RICO allegations at an early stage of the

23 litigation."  *Wagh v. Metris Direct Servs., Inc.*, 348 F.3d 1102, 1108-09 (9th Cir. 2003), *overruled*

24 *on other grounds*, *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007).  Here, the Court

25 notes that these claims have been brought by Plaintiffs' counsel in nearly identical form in other

26 cases in this District, and have been dismissed with prejudice.  *See Rubio*, 2014 WL 1318631, at

27 *17-18 (citing *Bergman v. Bank of Am.*, 2013 WL 5863057, *29-30 (N.D. Cal. Oct. 23, 2013))

28 (collecting cases and dismissing nearly-identical claims with prejudice).  The Court adopts the

United States District Court
Northern District of California

reasoning of these previous cases and finds that Plaintiffs' RICO claim is "far from plausible." *Bergman*, 2013 WL 5863057, at *30 (citing *Zacharias v. JPMorgan Chase Bank, N.A.*, 2013 WL 588757, at *3-4 (N.D. Cal. Feb. 13, 2013)) (summarizing RICO allegations that are, with exception of allegations regarding bid-rigging, nearly identical to those in this claim and dismissing claim as "far from plausible" and "simply improper").  Accordingly, the RICO claim is DISMISSED with prejudice.

## CONCLUSION

Based on the analysis above, the Court hereby GRANTS Defendants' Motion to Dismiss. Dkt. No. 37.  Plaintiffs' FAC is DISMISSED WITH PREJUDICE.  Because the Court grants Defendants' Motion to Dismiss, it DENIES as MOOT Defendants' Motion to Strike.  Dkt. No. 38.

**IT IS SO ORDERED.**

Dated: August 7, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge